CARROLL, DONALD K., Acting Chief Judge.
The defendants in an action for materials furnished in the construction of a public building have appealed from a final summary judgment for the plaintiff entered by the Circuit Court for Leon County.
The issue before us for determination on this appeal is whether the court properly entered the said judgment; or, more precisely, whether, under the evidence before the court, the plaintiff sufficiently complied with Section 255.05(2), Florida Statutes, F.S.A., requiring a materialman to give written notice to the contractor of the delivery of the materials within 90 days “after complete delivery of materials and supplies. * * * ”
Sec. 255.05, sub-section (2), the critical statutory provision involved in this appeal, relates to the furnishing of materials in the construction of public buildings, and provides as follows:
“Any person supplying labor, material or supplies used directly or indirectly in the prosecution of the work to any subcontractor and who has not received payment therefor, shall, within ninety days after performance of the labor or after complete delivery of materials and supplies, deliver to the contractor written notice of the performance of such labor or delivery of such materials and supplies and the nonpayment therefor, and no action or suit for such labor or for such materials and supplies may be instituted or prosecuted against the contractor unless such notice has been given. No action or suit shall be instituted or prosecuted against the contractor or against the surety on the bond required in this section after one year from the performance of the labor or completion of delivery of the materials and supplies.”
*577 At a pre-trial conference the parties stipulated that there was no dispute as to the facts and that only a question of law remained for decision by the court
The undisputed facts pertinent to the issue of the plaintiff’s compliance with the quoted statute are essentially as follows:
On May 2, 1961, the defendant-appellant Clutter Construction Corporation, hereinafter referred to as Clutter, entered into a contract with the Board of Control of the State of Florida for the construction of the Molecular Biophysics Building on the campus of Florida State University in Tallahassee, Leon County, Florida. Thereafter Clutter, as principal, and the other defendant-appellant, Reliance Insurance Company, as surety, executed a performance and payment bond in favor of the State of Florida. Clutter as the general contractor then subcontracted the mechanical work on this project to one Virgil Reddick by a contract dated May 16, 1961.
Beginning on July S, 1962, the plaintiff supplied certain materials to the sub-contractor, Reddick, some of which were delivered to the job site and some delivered over the counter by the plaintiff’s employees at the plaintiff’s place of business in Tallahassee. Following the first sale on July S, 1962, there were twelve additional sales made by the plaintiff to Reddick during the rest of that month, IS of such sales in the next month, five in September, and one each on October 2, October 26, and December 28, 1962. At the said pre-trial conference the defendants admitted that all of the materials furnished by the plaintiff were utilized in the prosecution of Clutter’s contract for construction of the said Molecular Biophysics Building.
The last date mentioned above, December 28, 1962, is the critical date in the present consideration, for within 90 days after that date — to-wit, on February 18, 1963— the plaintiff notified Clutter as the general contractor by letter that the plaintiff had delivered material to be used in the project to the said sub-contractor but had not received payment therefor.
Whether the plaintiff’s giving of the just-mentioned written notice sufficiently complies with the requirements of the above-quoted provision of Sec. 2SS.0S, is the precise point for determination on this appeal. The appellants contend that the said notice was ineffectual under the statute because it was given more than 90 days “after complete delivery of materials and supplies. * * * ” An integral part of their contention, of course, is that the “complete delivery,” as contemplated by the statute, occurred prior to the sale of December 28, 1962, and that the said sale did not serve to extend the time for the giving of the notice contemplated by the said provision of Section 255.05.
In support of their contention the appellants rely upon the stipulation entered into by the parties at the pre-trial conference that the work was substantially completed on September 15, 1962, that the building was finally completed on November 1, 1962, and that any work done thereafter was in the nature of patching, correcting, or repairing. The appellants recognize, however, that Reddick’s contract with Clutter required him to make the necessary repairs after completion of the work called for in his said contract, and that Clutter was required by its contract with the Board of Control to make necessary repairs.
Reddick’s foreman testified in his deposition, which was before the court, that on December 28, 1962, he drove in one of Red-dick’s trucks to the plaintiff’s place of business and ordered three drill bits of an unusual size for use in installing in the said building a fire damper as required by the specifications of Reddick’s contract with Clutter; that he told the plaintiff’s salesman that the purchase should be billed to the biophysics job, and the invoice was so written; and that he was “reasonably sure” that the items then purchased were used at the said building.
*578 From the foregoing testimony and stipulation we think that the only conclusion that can be fairly drawn is that the items purchased by and delivered to Reddick’s foreman on December 28, 1962, though the items are seemingly minor in nature, were used in the patching, correcting, or repairing of the work which Reddick was required to perform by his contract with Clutter, in pursuance of his obligation thereunder to make necessary repairs after the completion of the work called for by that agreement. Upon the basis of this factual conclusion, the basic question before us is whether the plaintiff’s written notice of February 18, 1963, was delivered to Clutter “ * * * within ninety days * * * after complete delivery of materials and supplies * * * ” to Clutter’s sub-contractor, Reddick, within the contemplation of these quoted words of Section 255.05, Florida Statutes, F.S.A. Since the only delivery of materials taking place within the 90 days preceding February 18, 1963, was the delivery of the materials to Reddick’s foreman on December 28, 1962, the pinpointed question before us is whether the “complete delivery of materials and supplies” did not occur until the latter date.
To answer the last-stated question we must analyze, interpret, and apply the above-quoted provisions of Section 255.05 relating to a materialman’s written notice to the general contractor.
The appellants in their brief on this appeal contend that the purpose of the said provisions “is clearly to protect the General Contractor and the Owner (in this case, the Board of Control) * * While we must realistically recognize that there are several economic groups involved in the construction business (including owners, general contractors, subcontractors, ma-terialmen, and workers), all of whom are naturally interested in promoting legislation in the field of mechanics’ and material-men’s liens favorable to their positions, we must and do assume that the members of the State Legislature in framing and enacting such legislation have done so with the intention that the laws will operate fairly as to all of the economic groups involved, as well as to the general public. Accordingly, in construing the said provisions of Sec. 255.05, we assume that the Legislature in enacting them intended to provide a procedure that would protect the materialman and subcontractor, as well as the general contractor, the owner, and the public.
Upon such an assumption, we think that the Circuit Court correctly ruled that the plaintiff’s notice of February 18, 1963, was timely delivered to Clutter under the statute. After all, Clutter in its contract with the Board of Control agreed to be responsible for repair work on the job, and Clutter, in its subcontract with Reddick, required Reddick to do the necessary repair work as to the latter’s part of the job. When Reddick’s foreman ordered the materials on December 28, 1962, and notified the plaintiff that they were to be used on the job in question (which materials were so used in the fulfillment of Reddick’s obligation under the subcontract and Clutter’s contract with the Board of Control), there was nothing to alert the plaintiff to the possibility that it would not have the statutory 90-day period within which to notify Clutter if payment were not made. Without such a statutory right under these conditions, a materialman would hesitate to furnish materials on credit to any subcontractor on a public project for fear that they might be used in repair work and that he might thus lose his lien. The materialman presumably would rarely have the facilities or time to make sure that the materials would be used in a way that would give rise to a lien in his favor.
At the oral argument on this appeal the appellants confronted us with our decision in Russell v. Danford, Fla.App., 139 So.2d 743 (1962), as their chief Florida authority supporting their position. In that case the Circuit Court for Volusia County had entered a decree dismissing the plaintiff’s complaint in a suit to foreclose a mechanic’s and materialman’s lien. We upheld as sufficiently supported by competent evidence the chancellor’s finding that the contract to *579 furnish labor and materials in constructing a dwelling had been completed more than 90 days before the plaintiff filed his claim of lien, and that work done by the plaintiff after completion of the contract was for the purpose of correcting defects which he was obligated to correct under an express warranty provision of the contract, which repair work did not extend the time for filing the lien claim. While that decision at first reading may seem to be controlling in the case at bar, we think that a consideration in depth will show that the two situations are not legally comparable. Among the decisive differences between that and the instant case are the following: In the Russell case a statute other than Sec. 25S.0S was involved and interpreted; in that case the plaintiff had performed work and furnished materials in constructing a dwelling under his contract with the defendants, who were apparently the landowners, rather than with a subcontractor, as in the present case. The major distinction between the two cases, however, is that in the Russell case the chancellor was sitting as the trier of the facts and so we were unauthorized to substitute our judgment on the facts for his, and our only function was to determine whether there was competent, substantial evidence in the record to support the chancellor’s finding. We found there was such evidence and said that “his decree of dismissal based upon such finding should not he disturbed.” We then affirmed the chancellor’s decree.
In the opinion in the Russell case, supra, we had occasion to discuss and distinguish three decisions of the Supreme Court of Florida which had been cited as authority for reversing the decree therein appealed from. One of those cases, we think, is pertinent to the problem before us on the present appeal.
The decision in question is Century Trust Co. of Baltimore v. Allison Realty Co., 105 Fla. 456, 141 So. 612 (1932), which was a suit to foreclose a mortgage and a lien for labor performed and materials furnished in the erection of a building by a certain corporation, which had assigned the latter lien to the plaintiff. The plaintiff also sought to establish the latter lien as prior to that of the defendants’ mortgages. The foreclosure suit was filed on May 19, 1928. The plaintiff conceded that, if the performance of the work and the furnishing of the materials in pursuance of the building contract had been completed before May 19, 1927, a year prior to the date when the suit was filed, the plaintiff had no right to file the suit to establish and foreclose a statutory lien, because such a suit was barred by statute. The statute referred to was Sec. 5393, Comp.Gen. Laws 1927 (now known as Sec. 86.11, Florida Statutes, F.S.A.), which provides that, when there has been no record of a notice of lien (and if the lien exists without such record), a suit to enforce the lien “must be brought within twelve months from the performance of the work or the furnishings of the materials * * In the final decree appealed from therein the chancellor found for the plaintiff, holding that it was entitled to the lien and that such lien was prior to the defendants’ mortgages.
In the Century Trust Co. case, the Supreme Court pointed out that, if the contract was completed prior to May 17, 1927, the plaintiff would lose its lien because its suit was filed more than 12 months from the performance of the work or the furnishing of the materials. During its discussion of the evidence the court referred to the work done after May 17, 1927, as “ ‘patching,’ touching up, and slight repair work” and the materials furnished after that date as “articles of a trivial character.” The heart of the court’s holding on this subject is revealed in the following statement in its opinion:
“Here there is no evidence to show that ‘patching,’ touching up, and slight repair work, or the furnishing of articles of a trivial character, was delayed for the purpose of extending the time for bringing the suit, or that the building had been accepted as completed.”
This statement, in conjunction with the remainder of the Supreme Court’s opinion, *580 justifies, we think, the holding as expressed in one of the headnotes to that case to the effect that the construction of a building “was still in progress as regards notice to mortgagee and statute of limitations, though substantially completed on certain date, provided materials furnished and work done thereafter were in exercise of good faith and within reasonable time * * The Supreme Court then affirmed the chancellor’s final decree.
The rule just quoted, we think, should apply with even greater force to a case like the present one which is controlled by the construction to be given a statutory period to commence upon the “complete delivery of materials and supplies” — which is the act of the materialman himself.
In the case at bar there is no evidence or contention that the plaintiff furnished the materials on December 28, 1962, in bad faith, or had been guilty of any delay for the purpose of extending the time for bringing the suit, or that such furnishing had not been within a reasonable time. As to the latter point, see the above recital of the dates on which the plaintiff had been regularly furnishing materials to Reddick to be used on the job in question.
In the present case, of course, we are concerned with the interpretation of these words of Sec. 2SS.0S: “after complete delivery of materials and supplies.” These words literally relate to the act of the ma-terialman in furnishing materials to a subcontractor. It will be noted that the Legislature in this enactment did not use words like “completion of the construction” or of the project, the contract, or the building, as in some statutory provisions. If such words had been used in Sec. 255.05, a materialman, before furnishing materials to a subcontractor, might well have to ascertain the current status of the entire project, lest he lose his right to file an action against the general contractor for such materials.
We have considered the other points raised by the appellants in this appeal and find those points to be without substantial merit.
For the foregoing reasons and upon the authority of the Supreme Court’s decision in Century Trust Co. v. Allison Realty Co., supra, we hold that the chancellor correctly applied the law in the final summary decree upon the undisputed facts, and so the said decree should be and it is
Affirmed.
WIGGINTON and RAWLS, JJ., concur.